May it please the Court. You may proceed. Thank you, Your Honors. I'd like to preserve five minutes for rebuttal. Just keep an eye on the clock. Yes, sir, I will. I'm Courtney Koger. I'm here on behalf of Universal Engravings, which we typically refer to as UEI. We have a number of issues before this Court because we have two consolidated appeals. They both arise out of the same case and the same trial below, but the second appeal specifically relates to an award of attorney's fees, and that award of attorney's fees was made two or three days before the brief in the first appeal was due. So we the cases were consolidated after briefing. The issues that are before this Court are, number one, relating to the judgment. What was the effect of the incorrect prediction by the district court of how Arizona would interpret the Arizona Uniform Trade Secret Act, which we call OUTSA, and the scope of preemption? Judge Snow below predicted that Arizona would follow what is sometimes called a majority ruling and a very broad scope of preemption, and while this appeal has been pending, the Arizona Supreme Court has interpreted its own Arizona statute and said no. That's an ORCA case? Yes, sir. That is the ORCA decision, and it specifically goes the other direction. And what ORCA does is it allows tort claims arising from misappropriation of confidential information to survive. They are not preempted under OUTSA, the Trade Secrets Act. During trial of this case, Judge Snow required UEI to elect between whether it wanted to proceed on its trade secrets claim or it wanted to proceed on its then-remaining tort claims, which included tortuous interference with a contract, unfair competition, and I believe there was an aiding and abetting breach of fiduciary duty. And UEI, which believed that its damages of unjust enrichment were similar for both the tort claims and the OUTSA claim, when forced, elected to proceed with OUTSA. That requirement of election was in error under the Arizona Supreme Court's interpretation of OUTSA. We know that now. Judge Snow didn't have the benefit of the ORCA decision. Do we have other claims besides the confidential information claim that is clearly determined by ORCA? Yes, Judge. We believe that there is evidence in the record that Metal Magic was asking Dr. Duarte to take steps for his employment for the benefit of Metal Magic, start working on projects while he was still employed, which would not so there is clearly a breach of. What damages would have flowed from that? As I understood the district court's order, it was basically that the same damages are being asked for for these various causes of action. You don't have a separate claim for a different kind of damages, so you don't really have a separate kind of claim. Is there a separate kind of damage that was proven up? Well, it's certainly not proven up, because on the second or the third, the morning of the third day of trial, there was an election and there was no further evidence put on for the other claims. Well, the election was driven, as I read the dialogue, by the fact that you didn't have a different kind of damages to prove. That was. So the answer to my question, presumably, is that there was not a different kind of damage to be proven. Your client wasn't asserting or wasn't prepared to prove a kind of damage separate from what was being alleged as a violation of the Trade Secrets Act. That's correct, Your Honor. They were unjust enrichment damages, and then under the Trade Secrets Act also a reasonable royalty damage. But they do come from different claims, slightly different facts, and slightly different legal theories, and UEI was deprived of its day in court to present those other claims, those other theories. For example, we know that the jury found that Metal Magic misappropriated at least one trade secret. We know that from their question to the court. We don't know, and it was hotly disputed below, whether what UEI claimed were trade secrets were in fact trade secrets. Was the collective process of various elements, did that make a trade secret, or was it simply confidential information? We don't know what. If we know that the jury, or can infer that the jury concluded that there was at least one trade secret misappropriated, and yet the jury's verdict was not, did not award any damages for that, are we to infer that the basis for the jury verdict was a conclusion that damages weren't proven up? At least under whatever trade secret claim they found, I think we have to accept that conclusion, and that is a separate point on this appeal relating to the exclusion of damages evidence. But what we don't know is, what if the jury believed that there was one or two trade secrets misappropriated, but the other items didn't rise to the level of trade secrets? So they decided those aren't trade secrets, we can't even decide whether UEI was damaged by Metal Magic's theft of that information. They were UEI didn't get to the level of trade secrets, so that's a problem. Were the elements that were allegedly misappropriated so different as to lead to different damage claims? They could be, Your Honor. There were claims relating to the copper coating process of how copper plates were coated with a photoresist. There were claims that related to a computer program called MEMS that was very important in the brass die production. There were claims relating to the counters that were the other side of the brass die. They were made out of a resin product. And there were claims relating to vendor information. So different damages. There is evidence in the record, for example, that UEI saved $880,000 a year by coating its own copper, and that Metal Magic, prior to hiring Dr. Duarte, purchased 95 percent of its copper plates that it used already coated. So UEI, the jury could have inferred, if they found that the copper coating process was the trade secret that Metal Magic stole, that Metal Magic benefited by those efficiencies. They could also have found, if they determined that it related to the MEMS program, that the efficiencies in producing brass dies was some of them, and there's evidence in the record of what those efficiencies were in terms of labor savings and material savings in time. So the jury could have said, well, gee, there might be damages there, but we don't think that's a trade secret. We can't consider it. We don't know. We weren't in the jury room, and our system does not allow us, for good reasons that are outside this appeal, to go interfere in the jury deliberations. But what we do know is UEI was deprived its day in court on those tort claims. There is another issue before this Court that relates to collateral estoppel. And again, this also ties into the damages argument. Scalia. Why was Metal Magic joined as a defendant in that case? Your Honor, to the best of my knowledge, there was a concern about whether there was jurisdiction over Metal Magic in the State of Kansas. I honestly cannot answer that from firsthand experience, because we were not trial counsel, and I know you hate to hear that. But my understanding is there was a concern about personal jurisdiction. And so the lawsuit was against Dr. Duarte, who had been in Kansas, who had been a resident of Kansas, who had obtained all this information and signed the contract in Kansas to stop him, and then it became apparent that Metal Magic was or, as Judge Robinson, the district court judge in Kansas found, it was inconceivable that, given the facts that were presented to her, that Metal Magic was not obtaining and able to use the information that Dr. Duarte had acquired in 15 years at UEI and taken to Metal Magic. Well, what's your strongest argument about Privity? Our strongest argument about Privity is that the two parties, Metal Magic and Dr. Duarte, had the same interest in the Kansas litigation. Metal Magic retained counsel for Dr. Duarte. Dr. Duarte testified that he believed the attorney who was theoretically representing him and who entered an appearance on his behalf wasn't representing him, but was representing Metal Magic. And they met, Dr. Duarte and his attorney met with some Metal Magic. Weren't there recitals that this attorney was specifically not representing Metal Magic, and Metal Magic would be represented by somebody else? Walter Brown was the attorney's name, and he did ultimately say, I was not representing Metal Magic, but when you asked, when Dr. Duarte was asked that question, and he was the client, he believed that his attorney was actually representing Metal Magic. That's key evidence. Well, it's evidence, but you are asking for a summary judgment. And what the district court said is there's a genuine issue of material fact here, which seems not a surprise, given different stories, and then the issue appears to have dropped out thereafter. And, Judge, no. Can you try to prove up at trial the elements for collateral estoppel? No. They were not attempted to be proven at trial, although there was an attempt to get the Kansas judgment in for other reasons. But if you look at the ruling on the motion in Limoney, the Kansas judgment and the motion specifically prohibited from being raised at trial absent an at-bar, side-bar conference and permission being granted. And in the Court's order denying the motion for new trial, the judge said it would have been completely inappropriate to let that come in at trial, given the question of fact. So the judge was not going to allow that to be proven at trial, but it is an issue of law that we believe this Court can look at and say the damages were established, the contract was valid and enforceable under Kansas law, and so those I and Dr. Duarte breached that contract. But we still have the issue of privity. There is still the issue of privity. How are we supposed to resolve that? We believe there is sufficient evidence in the record to show that Dr. Duarte Well, is sufficient evidence enough? I mean, you sought a summary judgment. That means the exclusion. That means the case is so one-sided there's not a genuine issue. Suppose we conclude there's a genuine issue. What do we do? I believe that would happen. You would remand it and it would be addressed at the district court, along with the other issues when you remand on the ORCA issue and the outs of preemption issue. And there could be But didn't the district court make a ruling? Yes, Your Honor. He denied the summary judgment motion and then he ruled that the Kansas judgment and the proceedings could not be mentioned at trial, and then he affirmed in his new There are two other issues on the principal appeal. One relates to the computer forensics evidence, and one relates to damage testimony. And those have those are reviewed under an abuse of discretion standard. UEI's prior counsel did not timely designate or did not timely provide the report for the computer forensics. That was because they were not able to get discovery from Metal Magic. They didn't get the computer. The district court denied their effort to supplement after the deadline in the scheduling order, but did hold that they could use other means to prove their case, which they were able to do, ultimately because the district court, based on Metal Magic's bad acts and unreasonably delaying legitimate discovery issues, required a stipulation that certain documents on Metal Magic's computers would be admissible at trial, and that showed UEI's evidence was on at trial. But it did deprive UEI of some evidence showing the copying that would have been supportive of their claims of how evidence got from UEI to Metal Magic. The key is the damages. This case does tend to hinge on the damages claims. Glenn Hutchison was the principal owner behind UEI. He founded the company way back in, like, the 1970s, and he testified based on his years of experience in the industry and his experience with UEI. But his testimony was precluded on certain key aspects, including the benefit to Metal Magic of the trade secrets and confidential information that were misappropriated. The district court agreed and precluded that testimony. It did allow some testimony on damages, but ultimately, we believe that his — that the district court erred in what it excluded, and the importance and the prejudice of that error shows in the juror's question about finding damages. And it comes up again in the attorney's fee appeal, because Metal Magic argues that there were no damages, and that, therefore, UEI should pay attorney's fees for a claim in bad faith, or they proceeded without substantial justification, or the district court had inherent authority to award attorney's fees for this kind of bad faith. Sotomayor, with respect to the attorney's fees issue, was there a finding of bad faith by the court? No. The order granting attorney's fees has no findings whatsoever. It just orders an amassment. What was the theoretical basis for the court's awarding attorney's fees? Was it tied to a statute or? Your Honor, the order is silent. We do not know. That is one of our points on appeal, is this Court has said district courts have to explain their rationale, and the district court here did not. They awarded a perjury. It was silent both as to the rationale and as to how the amount was calculated, yes? That is correct, Your Honor. So it makes it difficult for us to come here and say he was wrong because he based it on this statute, or he was wrong because he based it on this statute, or what proportion he granted, we don't know. So that in and of itself is a reason to overturn the award of attorney's fees. There is also the fact that all of the grounds sought require some finding of bad faith, none of which was made here. We have a district court judge who denied summary judgment where the defendants filed and said there is enough evidence here to go to trial. We have a district court judge who engaged in a lengthy argument and colloquy with counsel for Metal Magic about damages evidence at trial, and then said, no, there is enough here for a prima facie case. I'm denying your Rule 50 motion, and we're going to the jury. And, in fact, at one point, the judge even says to counsel, you're arguing about facts and how you think the jury will interpret them, but the jury doesn't have to go that way. So we believe that is evidence right there, that UEI had enough evidence to survive summary judgment, to go to a jury, and to present its claims, and that means that no award of attorney's fees can stand. Your Honors, I'd like to reserve my time for rebuttal if I may. Roberts. You may do so, counsel. We'll hear from Metal Magic. May it please the Court. Good morning, Your Honors. I'm Eric Dowell, and I'm here on behalf of the appellees, defendants below Metal Magic and Charles Brown. Mr. Brown, the owner of Metal Magic, is here with me at counsel table. I'm going to address the arguments in the order in which counsel raised them, first starting with the Otza preemption argument. The tort claims, the three tort claims that Universal Engraving brought against Metal Magic were all based upon the misappropriation of trade secrets. From the very beginning of this case, if you look at the complaint, if you look at the disclosure statements, if you look at the final pretrial order, every single claim was based on the misappropriation of trade secrets. Well, misappropriation of something, but we've heard the argument that, and the Arizona Supreme Court drew a distinction between trade secrets and confidential information. Couldn't plaintiff's theory be also described as misappropriation of confidential information that might not rise to the level of trade secret? Well, that's certainly what they're trying to do now, after the fact. They're certainly trying to recharacterize their claim as one not for misappropriation of trade secrets, but for confidential information. The problem is, they pled their case, they disclosed their case, and all along this time said, this is about misappropriation of trade secrets. Every category, every caption in their pleading, in their brief to this Court, reads about misappropriation of trade secrets. And to the extent they don't say trade secrets, they say misappropriation of confidential information and trade secrets without ever distinguishing between the two. What about the other claims like tortuous interference, et cetera? Well, the tortuous interference claim is based on the misappropriation of trade secrets. The way they pled their claim is they said, Metal Magic tortiously interfered with our contract with Dr. Duarte. How? By recruiting him and misappropriating our trade secrets. They unfairly competed with us by recruiting Dr. Duarte and stealing our trade secrets. And they aided and abetted Dr. Duarte in the breach of his fiduciary duties to us by stealing our trade secrets. Everything was about trade secrets, and there's a good reason for that. Because UEI knew it had a very weak, if nonexistent, damages claim. It knew if it proceeded under its tort claims, it would receive no award of attorneys' fees. This was all about attorneys' fees. UEI knew it couldn't prove damages, and it elected to proceed under OTSA because it had an opportunity to recover. Kennedy, this is a plaintiff. If the plaintiff doesn't have any other damages to recover and is proceeding to recover attorneys' fees, all they're doing is generating attorneys' fees for the sake of recovering attorneys' fees. That's not very plausible. Well, the case on damages was really nonexistent, Your Honor. But you don't be – if that's the case, then you don't proceed to generate attorneys' fees that you may have to pay for, leaving aside the risk that you've got to pay for the other guy's attorneys' fees, simply for the sake of I'm going to make the other company pay my attorneys' fees. That just doesn't strike me as plausible. Well, I think here in this case, Your Honor, they looked at their case, and they looked at what they had to prove for damages, and the damages theories that they raised were unjust enrichment and reasonable royalty. And they knew they couldn't prove those damages, or at least very many of them. And so if they were able to get a – Well, it may be the case that they didn't prove them, although the reason that they didn't prove them seems to be at least potentially linked to the inability of their CEO to be able to testify. I'm not getting to that issue, because I understand, frankly, that the judge has concerns about the capability of that witness. But that doesn't mean there are no damages. I have some trouble thinking that UEI brought this action, knowing that it couldn't prove up any injury and couldn't prove up any loss and couldn't get anything, but brought the action anyway. I mean, that's – they might have been wrong in their belief, but at some level, I have to believe they thought they had an injury to pursue. Well, I'm sure they thought that, no doubt about that. And throughout the case, and finally by the time we get to trial, they admitted we've not lost one sale, one customer, one vendor. The only thing we have is unjust enrichment, that is, the research and development costs that we put into these projects that we call trade secrets for the last 15 years, and some reasonable loyalty that they came up with. That was what they claimed. But when it came down to it, they elected OTSA so that they had at least the opportunity to recover their attorney's fees. But I want to address one thing before I run out of time, and that's the ORCA case. Counsel raised the ORCA case. It's a very academic discussion. It has no application whatsoever to the facts of this case. The trial court never made a ruling at all that said, to the extent your claims are based on confidential information that is a non-trade secret, I'm going to preempt those claims. What the district court did at trial is it said, UEI, tell me, tell me how these tort claims are different than your OTSA claim. I'm going to give you the opportunity. There was extensive discussion on this at the pretrial hearing. It was in the final pretrial order. UEI was well aware that we were raising the preemption argument before trial and had the opportunity at that point in time to say, there are claims based on trade secrets and there are claims based on confidential information, and there's a distinction. They never distinguished those, even though the pretrial order requires that they separately set forth those claims. UEI never, at the time of trial, the judge said to counsel for UEI, tell me how these claims are different. I'm going to give you overnight to do that. Kennedy, what he said was, tell me how the remedy is different. I mean, I'm looking at toward the close of trial day three, I think it is, where it says, I'm putting the burden on you. I made your record so on and so forth. Based on the nature of the unjust enrichment remedy you're seeking, and because that's the very same remedy you're seeking for misappropriation of trade secret claims, I read the statute as preempting your ability to do both. So he defines the two kind of claims as misappropriation of trade secrets and unjust enrichment, and says you seek the same remedy for both, and you can't do that under the statute. What I was saying to counsel is he was saying, to me, the OTSA claim and the misappropriation of confidential information claim or whatever tort claims you're calling them, they look to be the same claims. The tort claims look to be disguised trade secret claims to me. Show me how they're different, because you're seeking the very same unjust enrichment damages here and reasonable royalty damages for your tort claims as you are for your OTSA claims. Kennedy, you can have two different causes of actions that result in the same claim for damages, but you still have two different causes of action. And, again, he may be intending more, but the district court seemed to be focusing on how is the remedy any different. And when UEI comes back the next day, I said, I understand the ruling, I disagree with it, so on and so forth, but I don't have a different we went through the damages last night, and his point is it's the same damages. So even though it's a different theory, I don't have a different set of damages to offer. Now, how does ORCA prevent a different cause of action, even if it results in the same theory, to be pursued? ORCA has no application here. What they're trying to do after the fact, what UEI is trying to do after the fact is say, look, we had claims based in State law that arose based on confidential information. The question then and now is, what is that confidential information that's different than your trade secret information? What is that information? And what the judge focused on, because there wasn't ORCA at the time, the judge said, I think these claims look alike to me. You're seeking you're seeking misappropriation damages, trade secret damages for everything. So tell me how these claims are not just twins of the other. Show me how this is not just, as he put it, a find-your-own-adventure jury form. And UEI had that opportunity. He could they could have said at that point in time, and they even had 24 hours to raise the issue and to say to the court, Judge, we've looked at the claims, and our tort claims arise from confidential information that doesn't rise to the level of a trade secret. And then we have claims that are based on trade secret misappropriation. He never did that. And there's never a ruling from the court below that that was the reason for the preemption or the election of remedies. This is all an argument that's conceived after the fact because of the ORCA decision arising 12 months after the fact. That's what this is all about. I'd like, if I may, unless you have questions on that, I'd like to address briefly the collateral estoppel argument. The collateral estoppel argument is easily disposed of. UEI lost its summary judgment on that. The court, as you pointed out, said there's a question of fact as to privity. UEI never raised that argument again. As Your Honor raised, Judge Clifton raised, they dropped it. They didn't put it in the final pretrial order. In fact, in response to a motion in Limoney that Metal Magic filed where they said we want to keep the Kansas judgment out, Universal expressly represented to the court in response to that, they said, we have no intention of raising the doctrine of collateral estoppel to prove damages, which is exactly what their brief here says they want to do. Can you tell me where I could find that? I went through the record, which is big, so I confess I didn't turn every page. And I found the order on the motion in Limoney where the court seems to say in a more definitive fashion that this Kansas decision, there are different parties, we're not going to pay attention to that. And I couldn't figure out how we got from the summary judgment order, which says there are contested issues, genuine issues, material fact, to this more flat statement that Kansas is out. You're attributing at least part of it to UEI's concession that I'm not going to try to take Kansas up at trial. Where would I find that? It's in UEI's response to motion in Limoney number 6, and it's in the excerpts of record. Any chance to have a docket or a record cite to that? I don't exactly have the record cite here, but I can certainly supply that to the court. But it's in response to their to our motion in Limoney to keep the Kansas judgment out. Universal says, and it's in our briefing as well, and there's citation in our brief, we do not intend to use the Kansas judgment to show that damages have been established. What we want to do is show that the Kansas judgment is relevant to show there was a contract between Universal and Dr. Duarte. Well, we stipulated to that at trial. They also said we want to show that the Kansas judgment, that the judgment is enforceable because the contract is enforceable. Again, that's not an issue. On this appeal, however, what UEI is saying is we were denied the right to have the court apply collateral estoppel when they didn't even ask the court to apply collateral estoppel at trial. It was left out of the pretrial statement. It was in response to a motion in Limoney where they said we're not going to raise it. When and even in the order on motion in Limoney, the court said, look, I'm going to deny the motion at this point, but to the extent UEI, you want to raise this as an offer of proof at trial, go ahead, and I'll rule on it at that point. UEI never raised it again at trial. They want the only small portion in which they did raise it was to rebut some testimony by a witness, but not for purposes of collateral estoppel. That was not the case at all. So that issue is easily disposed of on this appeal. The expert report, I think, is even easier to dispose of. While UEI now tries to blame Metal Magic and, frankly, the district court on that issue, the blame lays entirely at the feet of Metal Magic – I'm sorry, at the feet of UEI and its counsel. UEI sought an extension of the court's case management order to disclose its expert report. It was unopposed by Metal Magic. They got a new date for their expert disclosure. They waited until within 30 days of that new deadline to even hire an expert. They waited to within five days of that deadline to even give the computer that they had in their possession the entire time to their expert for him to look at. And there was extensive discussion between the parties about discovery disputes at that point in time, which is all in the record. There were offers made to mutually exchange the computers that each side used, and the parties had at least tentatively agreed to that, until at the last moment Universal said to Metal Magic, we're going to only just have our computer, we're just going to look at your computer, we're not going to give you ours, which Metal Magic said no. The district court found, when Universal tried to reopen this whole issue of the expert discovery period, the district court said, UEI's counsel did not act with due diligence. If you had a discovery dispute, you could have brought that to my attention. If you thought you couldn't work it out with opposing counsel, bring it to my attention and let me rule on that. You wait 45 days until after the second extended discovery period to even file a motion after, by the way, the deadline for Metal Magic to depose the expert, after we had already flown to Texas to pose their expert on the first report, they file a motion to then supplement the report on another. We never had the opportunity to depose the expert. Judge Snow said, you don't need to. They weren't acting with due diligence. And I have management and discretion over my case management plan, and I'm not going to let them do that. That issue is easily disposed of in this case. The final, well, there's two other issues, the one involving Mr. Hutchison and his testimony. Mr. Hutchison was given broad leeway by the trial court on what he could testify to. He was allowed to testify about his experience in the industry. He was allowed to testify about what he makes copper plates for, what he coats them for, what he sells them for in the industry, the efficiencies that he and his company gained by doing some of these processes in-house. All of the processes that we proved weren't trade secrets at all, but he was allowed to testify to that. But what Universal wanted him to testify to as a layperson is they wanted him to say, what is the value of these trade secrets to my opponent, to Metal Magic? The court said, no, that's the realm of expert testimony, and we're not going to allow that. And so the court denied that. The court said, however, if you want to prove that up in other ways, through other witnesses, if you want to call other, Mr. Brown, other folks within the company and try to prove that Metal Magic gained some efficiencies or some of those same benefits that you claim they unjustly took, you can do that. But I'm not going to allow the owner of the company, who's not an expert, to come in and testify about expert things, particularly the value of trade secrets to someone else. Sotomayor, what about the attorney's fees issue? I found that I couldn't find any basis, theoretical or statutory, to upon which the court imposed those fees. The court gave us a very abbreviated order, one sentence or two, about the award of attorney's fees. The amount of fees submitted was approximately 1,080,000. The court entered an order with costs and fees. Yes, but what's the theoretical basis for that? Just inherent authority? We don't recognize that, do we, for attorney's fees? Well, certainly the court does have inherent authority, but there was an OTSA statute that allows for the recovery of attorney's fees for matters that are brought in bad faith. There's also two errors in the finding. But was there a finding of bad faith in this case? There was not an express finding of bad faith. But I submit to you that the court has the authority to do that. So we are to imply it, then? I'm sorry, State, again? We are to imply a finding of bad faith? Your Honor, there's authority in the briefing for the proposition that if this Court finds that there is sufficient evidence from a clear record below, then it doesn't need to be remanded to the trial court for that finding. Now, one important point here, one of the questions earlier was there was no calculation of fees or hours or fees. UEI waived that issue. In their response to Metal Magic's motion for attorney's fees, UEI expressly stated, we're not going to contest the hours and the rates. That's in the local rule 54.2b of the Arizona rules of court. They waived that. We're not going to challenge that. So the only ground would be the standards. And granted, Judge Snowe did not put his finding as to bad faith in the order. But if there's sufficient evidence in this record for the Court to find that, and I believe there is, based on our briefing, then you can affirm that award and not remand it for any further findings on that issue. So with that, if there's any other questions that I can address from the Court? No further questions. Thank you, counsel. Thank you. We'll hear from Ms. Kogar. You have some reserve time. Thank you, Your Honor. I find it very entertaining that Metal Magic now says this majority-minority interpretation of OUTSA doesn't matter. ORCA doesn't come into play, because if you look at the record, Metal Magic submitted a Rule 28J letter to this Court on October of 2013, well after trial, saying, hey, Ninth Circuit, the District Court of Arizona has issued another opinion in which it adopts the majority interpretation of OUTSA. That's further grounds for you to affirm our decision on the appeal. But that's exactly the rule that ORCA says, no, Arizona doesn't adopt the majority rule. So Metal Magic thought it was important when they submitted a Rule 28J letter. Now they want to tell you it doesn't matter. That's inconsistent, Your Honors. Well, I'm trying to figure out what's at issue in this case. And I look at the final pretrial order, and I see lots of references to misappropriation of trade secrets. And I'm not finding references, I found one specifically, to a reference to confidential information distinct from trade secret. Is this case really about anything other than misappropriation of trade secrets? There was confidential information, Your Honor. Even Metal Magic admits it in their brief. I'm looking at their summary of argument, and they say, you know, page 17 of their brief, UEI's claims are based on the alleged misappropriation of trade secrets and confidential information. Yes, after the OUTSA preemption issue was waived, there was a focus to emphasize the trade secret, but there was also the final pretrial order, which is well before the district court said pick your path. Before it was ruled, yes, but it was raised at that point, because it's addressed in that pretrial order. There is an election. But if anything, that would tend to make your predecessor counsel more conscious of the need to clearly define different paths, and I don't see that in the final pretrial order. I don't see that in the final pretrial order either, Your Honor, which was not the some extensive review. Sotomayor, why isn't the tortuous interference in the pretrial order? There were issues about tortuous interference in the pretrial order, but they weren't specifically addressing the trade secret confidential information division at the time. All right. So your argument is you preserve that claim. Tortious interference is in the pretrial order, yes, Your Honor. There are three tort claims, and that is one of the three, and unfair competition is also in there. And then to look to go back to where we were discussing damages, and specifically the attorney's fee award, I would remind the Court that when UEI filed this litigation, there was already a finding by Judge Robinson in Kansas who had reviewed evidence on the merits for summary judgment, even though that motion was unopposed, and had then had a hearing on damages. So UEI had a judgment from a district court, Federal district court judge, saying plaintiff is entitled to damages for misappropriation of trade secrets in the amount of $6 million-some-odd dollars, exemplary damages, injunctive relief, damages for breach of loyalty, and so on. But that was against Dr. Duarte only. That is against Dr. Duarte. But that is certainly evidence that UEI believed it could judicially establish. It had damages for the misappropriation of its trade secrets. Kennedy. What about the suggestion that UEI abandoned the Kansas judgment as a basis for collateral estoppel? Is that true? I believe it is not, Judge. I believe that UEI's then counsel interpreted the Court's summary judgment ruling to say you can't use collateral estoppel, and so they sought to prove in other ways, believing that it was raised. I've read the summary judgment order. I don't think it says that. If UEI's predecessor counsel read it that way and decided, okay, I'm not going to try to prove it up, that may be that lawyer's decision, but that doesn't mean the Court said he couldn't. So the court said he couldn't. Your Honor, I acknowledge what the summary judgment order says, and I cannot answer for trial counsel, but I do believe it was preserved in the record being raised on summary judgment, and it was addressed in the post-trial briefing, at which point the district court did not believe it had been waived, but actually addressed it in the motion for new trial, if you read the district court's order. He did not say collateral estoppel had been waived, so Judge Snowe clearly did not believe there had been a waiver, even though he's the judge who signed the pretrial order and the judge who signed the summary judgment and the judge who heard the trial. Your Honors, my time is up, so thank you very much for your consideration. Thank you, counsel. The case just argued will be submitted for decision, and the Court will adjourn.
judges: Rakoff, O'scannlain, Clifton